1
2
3
4                 UNITED STATES DISTRICT COURT
5               NORTHERN DISTRICT OF CALIFORNIA
6
7    LISA D. BAYLIS,                    )
                                        )   No. C-08-03646 SC
8                  Plaintiff,           )
                                        )
9          v                            )   ORDER RE: CROSS-
                                        )   MOTIONS FOR SUMMARY
10   MICHAEL J. ASTRUE, COMMISSIONER OF )   JUDGMENT
     SOCIAL SECURITY,                   )
11                                      )
                                        )
12                 Defendant.           )
     _____)

13   **I.   INTRODUCTION**

14       Plaintiff Lisa D. Baylis ("Plaintiff") brings this action

15   under 42 U.S.C. § 405(g) seeking judicial review of the Social

16   Security Administration's ("SSA" or "Defendant") final decision

17   denying disability benefits under the Social Security Act ("Act").

18   The parties have filed cross-motions for summary judgment

19   ("Plaintiff's Motion" and "Defendant's Motion").  Docket Nos. 15,

20   17.  For the reasons stated herein, Plaintiff's Motion is DENIED

21   and Defendant's Motion is GRANTED.

22

23   **II.  BACKGROUND**

24       Plaintiff filed an application for Social Security Disability

25   Insurance Benefits and Supplemental Security Income Benefits on

26   August 29, 2005.  Social Security Administrative R. ("AR") at 140,

27   Docket No. 12.  Plaintiff alleges that she is and has been unable

28   to work because of pain in the back, hip, legs, arms, and neck

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

associated with arthritis, scoliosis, disc disease of the spine, chronic joint inflammation from fibromyalgia and rheumatoid arthritis, difficulty concentrating and depression. Id. at 20, 396, 398-99.

Plaintiff was born on December 9, 1957. Id. at 49. From 1980 to 1984, Plaintiff worked at Samuel Merritt Hospital as a telecommunications operator. Id. at 72. Plaintiff was a homemaker from 1985 to 2000. Id. From 2000 to 2002, Plaintiff worked at the Berkeley Police Department as an office clerk. Id. From some time in 2002 until March 1, 2003, Plaintiff worked as a home health care provider. Id. Since then, Plaintiff has not been employed. Id. at 71.

**A.  Plaintiff's Medical History**

Plaintiff has expressed continuing back and joint pains, and the record reflects that she suffers from a degenerative disc disease of the cervical and lumbar spine as well as osteoporosis. See Id. at 21. X-rays taken on July 12, 2005, revealed that Plaintiff's lumbar spine had "spurring with interspace narrowing at L3-4, consistent with some degenerative disc disease" but was "[o]therwise, essentially within normal limits." Id. at 202. X-rays of Plaintiff's right hip and shoulder revealed no abnormalities. Id. On October 27, 2005, a magnetic resonance imaging ("MRI") exam showed degenerative changes to spinal discs and mild spondylolisthesis (the displacement of a vertebra relative to the vertebrae below). Id. at 253. Plaintiff's disc disease also appeared on a later MRI exam, taken on April 26, 2006. Id. at 240.

2

United States District Court
For the Northern District of California

Internal medicine physician Dr. Bruce Fitzgerald examined Plaintiff on October 6, 2005. Id. at 163-65. Dr. Fitzgerald noted tenderness in Plaintiff's neck and right shoulder. Id. at 163. Dr. Fitzgerald noted the Plaintiff's report of "joint pain, neck pain, right shoulder pain, right leg pain, low back pain, and hip joint pain." Id. at 165. However, he stated that Plaintiff had no neurological abnormalities, as sensation, reflex and motor were each normal; no atrophy; no disorganization of motor functions or limitation in reaching, handling, or fingering; and no fractures nor need for an assistive device for ambulation. Id. at 163-65. Dr. Fitzgerald noted that Plaintiff had been prescribed Naprosyn, Baclofen, Clinoril and Ultram -- all medications for musculoskeletal ailments -- as well as physical therapy. Id. at 165.

Plaintiff underwent a comprehensive internal medicine assessment by Dr. Joseph M. Garfinkel on November 21, 2005, in connection with her application for benefits. Id. at 258-63. Dr. Garfinkel noted "[c]hronic cough, probably caused by asthma" and "[j]oint pain in most joints of her spine, upper and lower, upper and lower extremities caused by arthritis." Id. at 262. He observed that Plaintiff's gait was "within normal limits." Id. He assessed Plaintiff's residual functional capacity ("RFC") as follows:

> The claimant can lift or carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand or walk six hours in an 8-hour day. The claimant can sit six hours in an 8-hour day. The claimant must periodically alternate sitting and standing to relieve pain or discomfort. The claimant can climb, stoop, kneel or crouch occasionally.

3

United States District Court

For the Northern District of California

1   Id.

2       On December 19, 2005, agency physician Dr. Ida J. Newton

3 completed a physical RFC assessment finding Plaintiff able to lift

4 20 pounds occasionally and 10 pounds frequently and to stand

5 and/or walk about 6 hours in an 8-hour workday. See id. at 243.

6 Dr. Newton's December 15, 2005, assessment was used as a basis for

7 classifying Plaintiff as "light RFC." See Id. at 251.

8       On December 1, 2005, Plaintiff began to see Richard Wong

9 ("Wong"), a physical therapist. See id. at 187-88. During her

10 first meeting with Wong, she was given exercises and stretches to

11 complete. Id. However, Wong's reports reflect that Plaintiff did

12 not regularly comply with the regiment prescribed by Wong, and she

13 frequently missed or cancelled her appointments with him. See,

14 e.g., id. at 187, 278, 284, 290, 298, 331. On April 14, 2006,

15 after a period during which Plaintiff did not contact Wong, Wong

16 discharged Plaintiff. Id. at 331. Wong apparently resumed care

17 of Plaintiff by November 21, 2006. See id. at 298. However on

18 December 27, 2006, Wong noted "no further contact with patient"

19 and discharged her for the second time that year. Id. Plaintiff

20 scheduled and kept another appointment with Wong on March 7, 2007.

21 Id. at 290. After the appointment, Wong noted that Plaintiff

22 stated that she had purchased a single-point cane but that she had

23 not used it when coming to the visit. Id. at 285. Wong noted no

24 significant gait deviations. Id. After missing several more

25 appointments in 2007, Wong again discharged Plaintiff from

26 treatment on May 25, 2007. Id. at 279.

27       Dr. Sheira Freedman was another physcian who had treated

28

4

Plaintiff, and Plaintiff now rests much of her argument upon
Freedman's assessment of her condition.  See Pl.'s Mot. at 10-12,
26-28.  Dr. Freedman began treating Plaintiff in April of 2006,
and saw Plaintiff throughout the summer and autumn of 2006.  AR at
240-41.  On October 18, 2006, Dr. Freedman diagnosed Plaintiff
with "severe disk disease" and "low back spasm" and noted a single
special precaution: "no heavy lifting."  Id. at 298.  However,
just under a year later, on September 11, 2007, Dr. Freedman
completed a "Residual Functional Capacity Questionnaire" that
suggested that Plaintiff's condition was considerably worse than
her previous assessment.  Id. at 383-86.  Dr. Freedman's answers
to this questionnaire stated that Plaintiff could not tolerate any
level of work stress and could only sit, stand, or walk for an
hour each day.  Id.  In response to an interrogatory propounded by
Plaintiff's attorney, Dr. Freedman explained the discrepancy
between this assessment and the assessment of October 18, 2006:
"Patient's pain and disability has worsened according to my
assessment."  Id. at 387-88.

**B.   Plaintiff's Psychological History**

On June 21, 2005, and October 6, 2005, Dr. Fitzgerald
assessed Plaintiff for mental disorders.  Id. at 159-62.  He
completed a "Short-Form Evaluation for Mental Disorders," and
noted that Plaintiff's mental status, cognitive functioning, mood
and affect, and perception were all normal.  Id. at 160-61.  Dr.
Fitzgerald noted an "unlimited" ability to perform all work-
related mental functions listed on the form.  Id. at 162.

On November 8, 2005, Dr. Mark D. Pierce, consulting clinical

psychologist, completed a full psychological evaluation and mental status exam of Plaintiff and found her cognitive abilities within the low-average range except with regard to working memory, in which she was mildly deficient. Id. at 180-84. Dr. Pierce noted that "this claimant evidences anxious and depressive adjustment" and "is not currently treated for depressive and anxious adjustment because of her inability to afford medications." Id. at 184. Dr. Pierce diagnosed Plaintiff as follows:

> AXIS I:   Depressive disorder, no otherwise specified
>           (secondary to chronic pain, untreated).
> AXIS II:  Deferred (side affects [sic] of medication and
>           above diagnoses result in significant attention
>           deficits and relative memory limitation).
> AXIS III: Complaint of chronic pain in the back, lung
>           disease, and other joints.

Id. at 184. He further noted that Plaintiff "retains the capacity to complete . . . simple and repetitive vocational skills" and "would have only milder difficulty working effectively with others." Id.

Plaintiff underwent a further mental evaluation just one month later on December 14, 2005. See id. at 191. Plaintiff was evaluated by Dr. Sharone Abramowitz, "psychiatric attending," who noted that Plaintiff's "depressed mood" was "mostly caused in reaction to pain; not a full blown major depressive [disorder] yet." Id. at 191. Dr. Abramowitz noted that Plaintiff had no formal thought disorder, impairments in insight or judgment, or gross memory abnormalities. Id. Dr. Abramowitz wrote:

> Axis I-   1. Pain d/o (see axis III);  2. Adjustment
>           d/o w/ depressed mood (due to #1)
>
> Axis II-  deferred personality d/o dx

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3

       Axis III- Significant upper & lower spinal DJD and
              spondylolisthesis; HTN; interstitial
              pulmonary markings (r/o chronic lung
              disease vs pulmonary HTN).

4
5
6
7
8

Id. Dr. Abramowitz noted that Plaintiff had "no [history] of

psychotherapy." Id. at 190. According to Plaintiff's testimony,

Plaintiff took medication for treatment of depression but did not

receive a referral to a mental health expert until September 10,

2007. Id. at 413.

9

     **C.** **Procedural History**

10
11
12
13
14
15
16
17
18
19
20
21
22

     Plaintiff filed an application for Supplemental Security

Income ("SSI") on July 25, 2005, for benefits beginning August 30,

2004.[1] Pl.'s Mot. at 2. Her application was denied on March 2,

2006, and again on reconsideration on March 30, 2007. AR at 30-

34, 38, 41-45. Plaintiff then requested a hearing before an

administrative law judge ("ALJ"). Id. at 46. The hearing was

held on September 13, 2007. Id. at 391-421. Plaintiff appeared at

the hearing, represented by counsel. Id. at 391. During the

hearing, the ALJ asked about the cane Plaintiff had used in

entering the hearing, and Plaintiff testified that it had been

prescribed to her by physical therapist Richard Wong.[2] Id. at

401-02. The ALJ asked Plaintiff about her long history of missed

medical appointments, and Plaintiff answered that she missed them

23
24
25

     [1] Plaintiff later amended the onset date to be the date of her
application, July 25, 2005. See Pl.'s Mot. at 2.

26
27

     [2] On February 15, 2006, Wong had informed the Social Security
Office that he had not prescribed a cane to Plaintiff, and although
he may have given her a verbal instruction, he does not recall
doing so. AR at 186, 254.

28

United States District Court

For the Northern District of California

because she was depressed and said, "I just couldn't get myself out of bed to go." Id. at 411. When the ALJ asked Plaintiff about her missed physical therapy appointments, she said that "it's the depression" and claimed that she was discouraged because the exercises did not help her. Id. at 412.

The ALJ asked for objective evidence in the record of rheumatoid arthritis, fibromyalgia, and congestive heart failure, and Plaintiff's attorney could not produce any. Id. at 414-19. In response to questions regarding records from treating sources for mental health, Plaintiff's attorney answered that there were none, including no referrals to a mental health professional. Id. Plaintiff then volunteered that Dr. Freedman had given her a referral to a mental health professional on the Friday immediately before the hearing, saying that she had not received a referral before because "[she] hid the way [she] was feeling," "wasn't being honest with [her] feelings," and "was sort of in denial." Id. at 413-14.

On October 31, 2007, the ALJ rendered a decision adverse to Plaintiff. Id. at 16-27. Under the regulatory framework of 20 C.F.R. § 1520, Plaintiff would be entitled to benefits if she could prove: "1) that she is not presently engaged in a substantial gainful activity; 2) that her disability is severe; and 3) that her impairment meets or equals one of the specific impairments described in the regulations." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir 2002). In his decision, the ALJ first found that Plaintiff was not engaged in gainful employment. Id. at 21. The ALJ then found that Plaintiff suffered from medically

determinable impairments ("degenerative disc disease of the cervical and lumbar spine, osteoarthritis and a depressive disorder") that significantly limited her ability to perform basic work activities and were therefore "severe" within the meaning of 20 C.F.R. § 416.920(c). Id. However, as to the third inquiry, the ALJ concluded that Plaintiff's medical records did not establish that Plaintiff suffered from any impairment listed in or equal to the listing of impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 21-22. The ALJ also found that Plaintiff's medical records did not satisfy the requirements of section 14.09A (inability to ambulate effectively or perform movements), of section 1.04 (listing level disorder of the spine), or of section 12.04 (mental impairments). Id. at 22. Plaintiff was therefore not automatically entitled to benefits. See 20 C.F.R. § 404.1520(d).

In reaching this conclusion, the ALJ rejected the 2007 opinion of Dr. Freedman as not well-supported by medically acceptable clinical and laboratory diagnostic techniques. Id. at 23. The ALJ did not afford weight to Dr. Freedman's opinion because it was contradicted by the objective evidence and opinions of other treating physicians, and because the opinion rested on Plaintiff's subjective reports, which the ALJ found not credible. Id.

After the ALJ found that Plaintiff's condition did not "meet or equal" the impairments listed in the regulation, Plaintiff could still be entitled to benefits if she could prove that she could no longer perform the work that she had done in the past.

United States District Court
For the Northern District of California

See Thomas, 278 F.3d at 955.  The ALJ found that she met this burden.  AR at 25.  This shifted the burden to the ALJ, to establish that Plaintiff could still perform a significant number of jobs in the national economy -- if the ALJ so found, then this ended the inquiry and Plaintiff would not be entitled to benefits. See 20 C.F.R. §§ 404.1520(f); Thomas, 278 F.3d at 955.  To meet this burden, the ALJ cited a vocational expert ("VE"), who had established during the hearing that Plaintiff could still perform a significant number of jobs in the local and national economy, even given her need to frequently alternate between a sitting and standing position (primarily jobs classified as "cashier II" positions). AR at 25.  The ALJ found that Plaintiff was "not disabled," and ineligible for SSI.  Id. at 27.

After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the final decision of the SSA. Id. at 5-6.  Plaintiff timely commenced the instant action seeking judicial review.  Plaintiff now appeals the ALJ's findings on four grounds, asserting that the ALJ improperly: dismissed the opinion of Plaintiff's treating physician; considered Plaintiff's behavior at the hearing and her absence of mental health treatment in his opinion; characterized Plaintiff as able to perform "light work" and characterized Plaintiff as a "younger individual."  Pl.'s Mot. at 2.

III.  **LEGAL STANDARD**

The plaintiff holds the burden of proving that she is disabled.  Cotton v. Bowen, 799 F.2d 1403, 1405 (9th Cir 1986).

10

An ALJ's decision may be overturned "only if it is not supported
by substantial evidence or if it is based on legal error."
Thomas, 278 F.3d at 954.  "Substantial evidence means more than a
scintilla but less than a preponderance."  Id.  It is the relevant
evidence which a reasonable person might accept as adequate to
support the ALJ's conclusion.  Reddick v. Chater, 157 F.3d 715,
720 (9th Cir. 1998).  Substantial evidence may be found anywhere in
the record as a whole.  Thomas, 278 F.3d at 954.  Where the
evidence could reasonably support either affirming or reversing
the ALJ's decision, a court may not substitute its judgment for
the ALJ's decision.  Holohan v. Massanari, 246 F.3d 1195, 1202
(9th Cir. 2001).

**IV.**   **DISCUSSION**

  **A.**   **The ALJ's Findings of Credibility**

      Much of the ALJ's decision was based upon his finding that
Plaintiff's testimony was not credible.  See, e.g., AR at 23
(rejecting conclusions of Dr. Freedman as based in part on
Plaintiff's subjective reports).  The ALJ did not err in finding
Plaintiff not credible. "Credibility determinations are the
province of the ALJ."  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir
1989)(citing Russell v. Bowen, 856 F.2d 81, 83 (9th Cir 1988)).
"Where, as here, the ALJ has made specific findings justifying a
decision to disbelieve an allegation of excess pain, and those
findings are supported by substantial evidence in the record, our
role is not to second-guess that decision."  Id.
      Under Cotton, "[t]he [ALJ] is not required to believe a

11

claimant's pain testimony, and the [ALJ] may decide to disregard
such testimony entirely whenever the claimant fails to submit
objective medical findings establishing a medical impairment that
could reasonably be expected to produce the claimed pain."  799
F.2d at 1407.  In this instance, Plaintiff had failed to submit
objective medical findings establishing an impairment that could
produce her alleged joint, heart, limb and neck pain.  The
objective evidence in this case pointed only to pain in the lower
back.  AR at 21-23.  "If the claimant submits objective medical
findings establishing a medical impairment that would normally
produce a certain amount of pain, but testifies that she
experiences pain at a higher level . . . , the [ALJ] is free to
decide to disbelieve that testimony . . . but must make specific
findings justifying that decision."  Cotton, 799 F.2d at 1407.  In
Bunnell v. Sullivan, the Ninth Circuit held that deference to an
ALJ's findings is warranted if such findings are "properly
supported by the record . . . [and] sufficiently specific to allow
a reviewing court to conclude that the [ALJ] rejected the
claimant's testimony on permissible grounds and did not
arbitrarily discredit a claimant's testimony regarding pain."  947
F.3d 341, 345-46 (9th Cir 1991) (internal quotation omitted).

        The Ninth Circuit has suggested factors an ALJ may consider
in assessing credibility, including:

        (1) ordinary techniques of credibility evaluation,
        such as the claimant's reputation for lying, prior
        inconsistent statements concerning the symptoms, and
        other testimony by the claimant that appears less
        than candid;

        (2) unexplained or inadequately explained failure to

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   seek treatment or to follow a prescribed course of

2   treatment; and

3   (3) the claimant's daily activities.

4   Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir 1996).  In this

5   case, the ALJ based his determination on such factors and

6   specifically identified facts in the record that lead him to his

7   conclusion.  He considered Plaintiff's history of missing medical

8   appointments, noting that she had missed twenty-four appointments

9   between January 2006 and August 2007.  AR at 24.  He noted the

10  discrepancies between her subjective accounts and the objective

11  evidence, such as the lack of positive findings in Dr. Garfinkel's

12  assessment and Dr. Freedman's sole positive observation of an

13  "antalgic gait."  Id. at 23-24.  The ALJ also noted Plaintiff's

14  assertion that she had been prescribed a cane by her physical

15  therapist, Richard Wong, when Wong stated he had never done so.

16  Id. at 25, 186.  The ALJ therefore made specific and appropriate

17  findings as to why he did not find Plaintiff's testimony credible

18  and did not arbitrarily discredit her testimony.  Id. at 20-27.

19  The ALJ's determination of Plaintiff's credibility is supported by

20  substantial evidence and must be upheld.

21           **B.    The ALJ's Treatment of Dr. Freedman's Opinion**

22           Plaintiff challenges the ALJ's handling of the opinion of Dr.

23  Freedman, one of Plaintiff's treating physicians.  Pl.'s Mot. at

24  26-28.  Plaintiff's contentions with respect to Dr. Freedman are

25  without merit.  Dr. Freedman submitted two reports.  The ALJ's

26  findings are consistent with Dr. Freedman's first report, from

27  October of 2006, AR at 298, as well as the findings of Dr.

28                                  13

Fitzgerald, <u>id.</u> at 163-64, Dr. Garfinkel, <u>id.</u> at 262, and Dr.
Newton, <u>id.</u> at 242.   In this earlier report, Dr. Freedman listed
Plaintiff's only limitation as "no heavy lifting."   <u>Id.</u> at 298.
When asked about the discrepancy between her 2006 report and her
2007 report, Dr. Freedman plainly stated that her changed opinion
was based on Plaintiff's worsened condition, not on any deficiency
in her previous assessment.   <u>Id.</u> at 388.

     The ALJ also properly rejected Dr. Freedman's unsupported
opinion of September, 2007.   A "medically determinable physical or
mental impairment" must be "demonstrable by medically acceptable
clinical and laboratory diagnostic techniques."   20 C.F.R. §
404.1527(a)(1).   An ALJ gives controlling weight to a treating
physician only when the "treating source's opinion on the
issue(s) . . . of your impairment(s) is well-supported by
medically acceptable clinical and laboratory diagnostic techniques
and is not inconsistent with the other substantial evidence in
your case record."   <u>Id.</u> § 404.1527(d)(2); <u>see also</u> <u>Thomas</u>, 278
F.3d at 957 ("The ALJ need not accept the opinion of any
physician, including a treating physician, if that opinion is
brief, conclusory, and inadequately supported by clinical
findings.").   A medical source's opinion on whether or not an
individual is "disabled" is not accorded weight because such
determinations are the province of the Commissioner, not the
medical source.   20 C.F.R. § 404.1527(e)(1).

     Dr. Freedman's 2007 report was not "well-supported by
medically acceptable clinical and laboratory techniques," as no
objective findings supported it.   AR at 23-24.   Dr. Freedman's

14

changed opinion rested in part on Plaintiff's subjective accounts of her pain, which the ALJ had found not credible. Id. at 23-24. An ALJ may properly dismiss a treating physician's opinion if it is premised on subjective complaints that the ALJ has found to be not credible. See Fair, 885 F.2d at 605. This was precisely what the ALJ did in this case. See AR at 23. Furthermore, the 2007 report was inconsistent with the other substantial evidence in the record, as Dr. Freedman's opinion was contradicted by her own previous opinion and the opinions of Plaintiff's previous treating physician and all other evaluating physicians. The ALJ properly set forth "specific and legitimate reasons" for discounting a treating physician's opinion that were based on substantial evidence. There is no basis for disturbing the ALJ's handling of Dr. Freedman's 2007 opinion.

**C.** **The ALJ's Consideration of Plaintiff's Demeanor and Lack of Mental Health Treatment**

Plaintiff also appeals on the grounds that the ALJ committed error by considering Plaintiff's demeanor at the hearing and her lack of mental health treatment. Pl.'s Mot. at 28-30. The Ninth Circuit has strongly discouraged reliance on a claimant's demeanor at testimony as support for an ALJ's conclusions. Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir 1984). Nevertheless, if there is other support for an ALJ's decision, then "[t]he inclusion of the ALJ's personal observations does not render the decision improper." Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir 1999) (citing Sellard v. Shalala, 37 F.3d 1506 (9th Cir 1994)); Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir 1992) (affirming

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   ALJ where "the ALJ's personal observation was only one factor

2   taken into consideration").  In this case, the ALJ did not

3   improperly rely on Plaintiff's demeanor in forming his decision

4   because this was not dispositive in the formation of his opinion.

5   As discussed previously, substantial evidence supported the ALJ's

6   findings regarding Plaintiff's credibility and non-disabled status

7   apart from his observations of Plaintiff's demeanor at the

8   hearing.  AR at 22-24.  The ALJ specifically noted that he did not

9   base his opinion solely on this factor but merely considered it in

10  the context of the entire record.  Id. at 25.

11      The ALJ also did not improperly consider the Plaintiff's lack

12  of mental health treatment.  The Ninth Circuit has criticized the

13  use of lack of such treatment as a factor in a decision "both

14  because mental illness is notoriously underreported and because it

15  is a questionable practice to chastise one with a mental

16  impairment for the exercise of poor judgment in seeking

17  rehabilitation."  Regennitter v. Comm'r of the Social Sec. Admin.,

18  166 F.3d 1294, 1299-1300 (9th Cir 1999) (internal quotations

19  omitted).  Dr. Pierce did note in his report on November 8, 2005,

20  that Plaintiff was not taking medication for depression because

21  she could not afford it.  AR at 184.  However, when questioned by

22  the ALJ, Plaintiff explained that it was because she "hid the way

23  [she] was feeling" and "wasn't being honest with [her] feelings

24  and what was really going on."  AR at 413.  Plaintiff did not

25  claim it was due to lack of funds but due to her own failure to

26  acknowledge her problem -- a fact which was, as the ALJ noted,

27  inconsistent with her history of willingness to discuss her

28

**United States District Court**
For the Northern District of California

1  medical and psychological concerns.  <u>Id.</u> at 23-25.

2       More importantly, the ALJ's determination of Plaintiff's

3  mental health was primarily based on the mental evaluations that

4  Plaintiff had undergone rather than on her lack of treatment.  The

5  ALJ noted that Dr. Fitzgerald had found that Plaintiff had normal

6  mental status and that Dr. Pierce had found Plaintiff able to

7  perform simple, entry-level work.  <u>Id.</u> at 23.  Dr. Abramowitz

8  found that Plaintiff did not have a major depressive disorder and,

9  though she described Plaintiff as "disabled by her pain," Dr.

10 Abramowitz did not find the Plaintiff to have a "full blown

11 depressive disorder yet."  <u>Id.</u> at 191.  An ALJ may discount a

12 claimant's statements if they are "unsupported by objective

13 findings."  <u>Gallant</u>, 753 F.2d at 1455.  The ALJ's determination

14 that Plaintiff's depression did not prevent her from working was

15 supported by substantial evidence that allowed him to give little

16 weight to Plaintiff's failure to pursue treatment.

17    **D.   The ALJ's Determination that Plaintiff Could Perform
          "Light Work"**

18

19      Plaintiff appeals the ALJ's determination that Plaintiff

20 could perform "light work."  Pl.'s Mot. at 24-26.  The ALJ

21 actually found that Plaintiff was capable of performing "light

22 work allowing for alternate sitting and standing at will . . . ."

23 AR at 25.  The ALJ had substantial evidence for this finding.  Dr.

24 Freedman's 2006 assessment had precluded Plaintiff only from heavy

25 lifting.  <u>Id.</u> at 298.  Dr. Fitzgerald, another of Plaintiff's

26 treating physicians, noted positive findings that were limited to

27 degenerative disc disease.  <u>Id.</u> at 163-65.  Dr. Garfinkel found

28

**United States District Court**
For the Northern District of California

that Plaintiff was able, in an eight-hour day, to lift or carry 20

pounds occasionally and 10 pounds frequently, stand or walk and/or

sit six hours.  Id. at 262.  Dr. Garfinkel also noted that

Plaintiff must alternate between sitting and standing.  Id.  The

only piece of evidence that may suggest an even more limiting

category than that found by the ALJ was Dr. Freedman's 2007

opinion, which was rejected by the ALJ for reasons described

above.

Plaintiff asserts that her need to alternate between sitting

and standing so erodes the "light" occupational base as to make

the ALJ's finding incorrect.  Mot at 24-26.  Plaintiff apparently

seeks to be classified under the "sedentary work" label, which

could compel a finding of "disabled" if coupled with

classification as a person "closely approaching advanced age"

(i.e., 50-55 years old, discussed infra).  See 20 C.F.R. Part 404,

Subpart P, Appendix 2, Table No 1.[3]  When an ALJ considers whether

a particular condition coincides with a certain work category,

"[t]he adjudicator will consider the extent of any erosion of the

occupational base and access [sic] its significance."  S.S.R. 83-

12.  When, as here a "claimant's exertional limitation fell

---

[3] Notably, application of the "sedentary work" category may be undermined by the same argument that Plaintiff advances against the "light work" classification.  The fact that Plaintiff must alternately sit and stand suggests that strict use of either category may be equally inappropriate.  See Social Security Ruling ("S.S.R.") 83-12 (an individual who must alternate between sitting and standing "is not capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated by most light work").  Here, the ALJ did not strictly apply either guideline category to determine job availability, but as explained below, relied upon the testimony of a VE.  AR at 25.

18

**United States District Court**
For the Northern District of California

between two grid rules [i.e., light work and sedentary work], the
ALJ fulfills his obligation to determine the claimant's
occupational base by consulting a vocational expert regarding
whether a person with claimant's profile could perform substantial
gainful work in the economy." Thomas, 278 F.3d at 960. Here, the
ALJ consulted a VE in making his determination, and properly
focused on whether Plaintiff could find jobs as a person who could
perform "light work allowing for alternate sitting and standing at
will . . . ." AR at 25, 422-29; S.S.R. 83-12, S.S.R. 83-14. The
VE testified that someone with Plaintiff's profile could perform a
type of job for which there are around 11,000 positions locally.
AR at 423-24. The ALJ is not required to make a finding of
"disabled" merely because there are few occupations available
given particular limitations. The Ninth Circuit has upheld social
security determinations in which only a few thousand jobs are
available locally as sufficient to constitute an adequate base of
employment options. See Thomas, 278 F.3d at 960-61 (1300 jobs
statewide); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir 1995)
(2300 jobs countywide); Barker v. Secretary of Health & Human
Services, 882 F.2d 1474, 1478-79 (9th Cir 1989) (1266 or 2466 jobs
locally).

    **E.    The Plaintiff's Age Classification**

Plaintiff asserts that the ALJ incorrectly characterized
Plaintiff as a "younger individual," contending that "[t]his case
involves a borderline situation." Pl.'s Mot. at 14. Plaintiff
was 49 at the time of the decision; the cutoff for the next age
category is age 50. 20 C.F.R. 404.1563(a) directly addresses such

situations:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors in your case.

The regulation does not require an ALJ to use the older age category in every situation in which a plaintiff's age would be outcome-determinative. See id. Regardless, Plaintiff's attempt to use the "borderline" regulation to obtain a bump up into an older age bracket is unavailing, given the ALJ's finding that Plaintiff was able to perform light work. AR at 25. To be effective, Plaintiff's argument would require a limitation to sedentary work. A fifty-year-old with the RFC for light work would not be deemed disabled under the grids. See 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No 2.

The ALJ's decision on Plaintiff's age was particularly appropriate given that Plaintiff was applying for benefits with an onset date in 2005, when Plaintiff was 47 years old and well within the 45-49 age range. The ALJ did not err in categorizing Plaintiff as a "younger individual."

///

///

///

///

///

///

///

United States District Court
For the Northern District of California

1    **V.**    <u>**CONCLUSION**</u>

2         For the reasons stated above, Plaintiff's motion for summary

3    judgment is DENIED and the Defendant's motion for summary judgment

4    is GRANTED.

5

6         IT IS SO ORDERED.

7

8         June 24, 2009

9                                        _____
                                         UNITED STATES DISTRICT JUDGE
10

**United States District Court**
For the Northern District of California

21